Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 13, 2003        Decided August 19, 2003

No. 02-3078

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMAL STEVEN HANSON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 99cr00208–01)

*Douglas Wham*, appointed by the court, argued the cause and filed the briefs for appellant.

*Thomas S. Rees*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE, HENDERSON, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Defendant Jamal Hanson pled guilty to distributing fifty grams or more of cocaine base. Before sentencing, Hanson moved to withdraw his plea on the ground that his counsel had miscalculated the appropriate sentencing range under the United States Sentencing Guidelines. The district court denied the motion and sentenced Hanson to 262 months' imprisonment. On appeal, Hanson contends that the court abused its discretion in denying his motion to withdraw the plea. We conclude that the court did not abuse its discretion, and we therefore affirm its judgment.

I

On May 20, 1999, Hanson spoke by telephone to a prospective purchaser concerning the sale of two ounces of cocaine base ("crack"). Unbeknownst to Hanson, the purchaser was an undercover officer of the Metropolitan Police Department, Detective David Dessin, and the conversation was electronically recorded. After the conversation, the two met in the 700 block of G Street, N.W. in Washington, D.C. Hanson sat in the front passenger seat of Dessin's car and handed the detective a brown paper bag filled with more than fifty grams of crack; Dessin gave Hanson $1,600 in exchange. The conversations and transaction were recorded on audio- and videotape, and two days later Hanson was arrested. A grand jury subsequently returned a two-count indictment, charging Hanson with distributing fifty grams or more of cocaine base on May 20, 1999, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and with distributing additional cocaine base to Dessin the previous month, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(B)(iii).

This was not Hanson's first arrest. Indeed, he had been arrested on several previous occasions. Two of those arrests, in 1993 and 1994, resulted in convictions in Maryland state court for possession with intent to distribute narcotics. The

1993 conviction involved over fifty grams of cocaine and three pounds of marijuana.

Attorney Charles Daum was assigned to represent Hanson, and after consulting with Daum, Hanson signed a written plea agreement with the government. Hanson agreed to plead guilty to the May 20th distribution of fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and to cooperate with law enforcement authorities "in any matter as to which the Government deem[ed] his cooperation relevant." Plea Agreement ¶¶ 1, 3(a) (Sept. 21, 1999). In return, the government promised, inter alia, to dismiss the other count of the indictment and to file a motion for a downward sentencing departure under United States Sentencing Guidelines (U.S.S.G.) § 5K1.1 if it determined that Hanson provided substantial assistance in the investigation or prosecution of another person. The agreement noted the offense's mandatory minimum sentence of 10 years' imprisonment and statutory maximum sentence of life, and stated that Hanson's sentence would be "imposed in accordance with the United States Sentencing Commission's Guidelines Manual." Plea Agreement ¶¶ 1, 12. The plea agreement also recited Hanson's "underst[anding] that the sentence to be imposed is a matter solely within the discretion of the Court," *id.* ¶ 12, and that Hanson would "not be allowed to withdraw the guilty plea . . . solely because of the harshness of the sentence imposed," *id.* ¶ 4.

On September 21, 1999, the district court held the plea hearing required by Rule 11 of the Federal Rules of Criminal Procedure. Hanson admitted to engaging in the May 20th drug deal and that his other relevant conduct made him accountable for a total of 146.5 grams of cocaine base. Daum summarized the plea agreement, and stated that "the government had also agreed that [it] would not file any enhancement notification" — a reference to the notice that the government must file under 21 U.S.C. § 851(a)(1) for a defendant to receive the mandatory life sentence prescribed for an individual who distributes fifty grams or more of cocaine base after two previous felony drug convictions, *see* 21 U.S.C. § 841(b)(1)(A).

The court advised Hanson of the statutory minimum (ten years) and maximum (life) sentences applicable to the offense to which he was about to plead. 9/21/99 Tr. at 5–6. In addition, the court discussed the import of the Sentencing Guidelines. In particular, the judge asked the defendant whether he understood that the court "won't actually determine your sentence in your case until after ... [the] presentence report," and that the court had authority "to impose a sentence that's more severe or less severe than the sentence called for by the guidelines." *Id.* at 6. Hanson said he understood. The judge also expressly warned the defendant against relying on "any prediction or promise as to what sentence you'll receive in this case," because "the Court doesn't know itself right now until after a presentence report is prepared." *Id.* at 10. Again, Hanson said he understood.

At the conclusion of the hearing, the court accepted Hanson's plea and released him on the condition that he maintain weekly contact with the government. *Id.* at 12–13. As contemplated in the plea agreement, sentencing was to be delayed until Hanson completed his promised cooperation. After his release, however, Hanson ceased cooperating and broke off all contact with the government. He later explained that he had ceased cooperating because of concern for his safety and that of his family — a concern that the district court described as "legitimate." 8/2/02 Tr. at 7.

The United States Probation Office prepared Hanson's Presentence Investigation Report (PSR) on December 12, 2000. The PSR calculated Hanson's base offense level as 32, and gave him a three-level reduction for acceptance of responsibility. But it also categorized Hanson as a career offender under U.S.S.G. § 4B1.1, which increased both his offense level and his criminal history category, and resulted in a guidelines sentencing range of 262 to 327 months' imprisonment.

That range was well beyond what Hanson had been told to expect by his attorney, Daum, who had calculated Hanson's guidelines sentencing range as 121–151 months. The error was apparently due to Daum's misunderstanding of the effect

of the two Maryland convictions. On the scheduled sentencing date, January 24, 2001, Hanson discharged Daum. The court continued the sentencing and appointed a new attorney to represent the defendant. On July 31, 2001, Hanson filed the first of three motions to withdraw his guilty plea. This motion, under then-effective Rule 32(e) of the Federal Rules of Criminal Procedure, asked permission to withdraw the plea based on Daum's ineffective assistance in giving erroneous advice regarding the guidelines sentencing range.

At the hearing on this first motion, Hanson testified that Daum had told him that "my guidelines were 121 to 151 months, and if I cooperated, possibly it could be cut by two-thirds." 11/9/01 Tr. at 16. Hanson insisted that Daum had never mentioned the possibility of a sentence higher than 151 months. Hanson also testified that Daum had not discussed any possible defenses with him. On cross-examination, Hanson admitted that he had taken part in the May 1999 drug deal. He also admitted that he had known at the time he pled that he would have faced a substantial risk if he had gone to trial; but he denied knowing that a conviction would have meant a mandatory life sentence. Finally, he acknowledged knowing that a guilty plea would result in his release pending sentencing, and that a downward departure for cooperation could result in a sentence below the guidelines range. *Id.* at 32–33.

On December 10, 2001, the district court denied Hanson's motion to withdraw his plea. Applying the test set forth in *United States v. Taylor*, 139 F.3d 924 (D.C. Cir. 1998), the court noted that the government had "conceded that it [would] suffer no prejudice" if Hanson were to be newly tried, a factor that "slightly favor[ed] Hanson's motion." *United States v. Hanson*, No. 99–0208, slip op. at 6 (D.D.C. Dec. 10, 2001). But the court also determined that Hanson had "asserted no viable claim of innocence," *id.* at 15, and that although Daum had rendered ineffective assistance, his deficient performance had not prejudiced Hanson. The court further noted that it had advised Hanson of the impossibility of predicting the applicable sentencing range prior to preparation of the PSR, that the evidence against Hanson was

"overwhelming" and that he had "provided no specificity at all with respect to his purported potential defenses to the charges," and that by pleading guilty Hanson had obtained not only the dismissal of the other count but also the opportunity to earn a downward departure from the guidelines and statutory mandatory minimum sentence. *Id.* at 14–15. Thus, the court concluded, the defendant had "made a rational choice to plead guilty," *id.* at 14, and there was "nothing unfair or unjust in holding Hanson to his plea agreement," *id.* at 16.

On December 27, 2001, Hanson filed another request to withdraw his plea, this time in the form of a pro se motion. In this motion, Hanson asserted that he "fully intended to make a viable claim of innocence," on the basis of discovery violations by the prosecution and defects in the chain of custody of the government's evidence. Mot. to Amend Original Compl. at 3, 6. He blamed his second lawyer, whom he had dismissed in the interim, for failing to raise these defenses in the preceding motion. On March 7, 2002, the district court denied this second request to withdraw, noting that, "with respect to a viable claim of innocence," the defendant had "merely referred to 'possible' issues . . . but ha[d] again failed to substantiate the claim with sufficient specificity and evidentiary support." *United States v. Hanson*, No. 99–0208, slip op. at 2 (Mar. 7, 2002).

Hanson then hired a third attorney, who filed a third request to withdraw. This request asserted, for the first time, that Hanson had an entrapment defense that he would have raised had the case proceeded to trial. On May 30, 2002, the district court held another evidentiary hearing. Hanson testified that he had gotten involved in the transactions at issue through his interactions with a man named Seay, the government's confidential informant and the boyfriend of Hanson's neighbor, Dominique. According to the defendant, Seay pressed him to sell the crack to Detective Dessin, preying on Hanson's sympathies for Dominique, who Seay said was pregnant and in financial difficulties. Dominique, Hanson said, was "like family" to him, and he engaged

in the drug deals to help Seay provide for her. 5/30/02 Tr. at 19.

The district court issued an opinion denying this third request on June 19, 2002. The court found it suspicious that Hanson had failed to bring up or substantiate the entrapment allegations earlier; the late-raised argument, the court said, "appear[ed] contrived." *United States v. Hanson*, No. 99–0208, slip op. at 13 (June 19, 2002). The court thought it likely "that Hanson carefully reviewed this Court['s] prior decision and retooled his approach by particularly zeroing in on the Court's prior statement that 'Defense counsel reiterated this general claim of a potential defense . . . but provided no further specificity or support for it.'" *Id.* at 14. Furthermore, the court held, Hanson's entrapment defense was not viable because "the Court finds that while Hanson may have taken some prodding before agreeing to engage in the narcotics transactions in this case, Seay's persistence was ultimately successful because it appealed to Hanson's self-interest as well as his altruism. The Court thus is unconvinced that Seay's appeal to Hanson's sympathies toward Dominique overcame Hanson's will to otherwise obey the law. . . ." *Id.* at 17.

Having denied Hanson's third attempt to withdraw his plea, the court sentenced the defendant to 262 months in prison, the bottom of the guidelines range. This appeal followed.

II

Hanson poses a single issue for our review: "[w]hether the district court abused its discretion in denying Mr. Hanson's pre-sentence motion to withdraw his guilty plea." Appellant's Br. at 1. The court's decision on Hanson's withdrawal motion was governed by former Rule 32(e) of the Federal Rules of Criminal Procedure, which provided: "If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court *may* permit the plea to be withdrawn if the defendant shows any fair and just reason."

FED. R. CRIM. P. 32(e) (2001) (emphasis added).[1]   In reviewing the denial of a motion to withdraw, we consider three factors: " '(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted.' "  *United States v. McCoy*, 215 F.3d 102, 106 (D.C. Cir. 2000) (quoting *Taylor*, 139 F.3d at 929).   As both parties agree, we review a district court's refusal to permit the withdrawal of a plea before a sentence has been imposed only for an abuse of discretion.  *United States v. Cray*, 47 F.3d 1203, 1206 (D.C. Cir. 1995).

The government does not contend that its ability to prosecute would have been substantially prejudiced if withdrawal had been permitted, a factor that in any event has never been dispositive in our cases.  *See id.* at 1208 (noting that "prejudice to the Government has never been a determinative factor in our decision to affirm the district court's decision to deny a motion to withdraw a guilty plea").   Hanson argues, however, that he had a viable claim of innocence based on his entrapment defense, and that his guilty plea was tainted because it resulted from Daum's incorrect advice regarding the guidelines sentencing range he would face if he pled.  We therefore turn to an examination of those two factors.

## III

Hanson contends that, had he gone to trial, he would have had a viable defense of entrapment.   The district court disagreed, concluding that Hanson did not have a viable defense and making clear that it thought Hanson had fabricated the claim in response to the court's statements.   Although we think it a close question whether Hanson's defense can be characterized as not "viable," there is no question but that it would have been extremely weak.   We therefore

---

[1] Effective December 1, 2002, the provision governing plea withdrawals was amended and moved to Rule 11(d).  *See* FED. R. CRIM. P. 11(d) (2003).

cannot conclude that the district court abused its discretion in deciding that the proffered entrapment defense added little weight on the side of permitting withdrawal.

The defense of entrapment "has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988); *see also United States v. Evans*, 216 F.3d 80, 90 (D.C. Cir. 2000); *United States v. Glover*, 153 F.3d 749, 754 (D.C. Cir. 1998). When a defendant claims entrapment, he first bears the burden of showing "that he was induced by the Government to commit a crime he otherwise would not have committed." *United States v. Ramsey*, 165 F.3d 980, 985 n.6 (D.C. Cir. 1999). If the defendant is successful, "the burden then shifts to the government to prove the defendant was predisposed to commit the crime." *Glover*, 153 F.3d at 754; *see also Jacobson v. United States*, 503 U.S. 540, 548–49 (1992).

Hanson argues that the inducement requirement was satisfied because the government's informant, Seay, repeatedly pressed him to sell drugs to Dessin. Hanson also asserts that Seay "play[ed] on [Hanson's] considerable sympathies for Seay's pregnant girlfriend, Dominique," the neighbor whom Hanson regarded as " 'like family.' " Appellant's Br. at 18. Hanson testified that he had sold the drugs "[s]trictly to help out Seay and Dominique's situation." 5/30/02 Tr. at 51.

This claim of inducement is quite weak. "[R]epeated government solicitations do not establish inducement unless the requests are coupled with persuasive overtures, or unless there is evidence of reluctance on the defendant's part demonstrating that the repetition of the requests may have moved an otherwise unwilling person to commit a criminal act." *Glover*, 153 F.3d at 754 (internal quotation marks omitted). And "[a]lthough we have . . . indicated that 'pleas based on . . . friendship' can satisfy the inducement prong . . ., we have never found such a plea sufficiently strong to do so." *Evans*, 216 F.3d at 90 (citations omitted). Moreover, Hanson's asser-

tion that his motive was friendship is belied by his admission that he had a profit motive as well,[2] an admission that is hardly mitigated by his protestation that friendship was the greater of the two motivating factors. And as the district court noted, the fact that it took Hanson thirty-two months and three lawyers before he asserted that Seay had entrapped him was a significant strike against the credibility of his claim of inducement.

But we need not tarry over the inducement prong, because the government had extremely strong evidence of Hanson's predisposition to commit the drug deal. During the preceding six years, Hanson had been arrested on narcotics charges multiple times and was twice convicted of possession with intent to distribute.[3] Indeed, he was still on probation for one of those convictions when he was arrested for the offense that is the subject of this appeal. PSR ¶¶ 29–32, 36. That conviction involved more than fifty grams of crack and more than three pounds of marijuana, with a total street value exceeding $40,000. PSR ¶ 29. Moreover, Hanson's testimony at the second evidentiary hearing "described his ability to obtain significant quantities of drugs quickly," his "independent knowledge (i.e., apart from Seay and Detective Dessin) of where to obtain the narcotics at issue," and his "thorough understanding of the current market prices for various quantities of narcotics." *Hanson*, slip op. at 18 (June 19, 2002). On cross-examination, Hanson further recounted that he

---

[2] *See* 5/30/02 Tr. at 41 ("[N]o person in his right mind would take a chance and endanger his life and not make nothing out [of] the deal. So, yeah, if I can help him out and make something on the side, I have to. I wouldn't just go get the drugs and then give it to him for free . . . .").

[3] *See United States v. Haire*, 103 F.3d 697, 699 (10th Cir. 1996) (holding that "[p]rior distribution of illegal drugs . . . constitutes predisposition"); *United States v. Tyson*, 470 F.2d 381, 384 (D.C. Cir. 1972) (holding that evidence of prior conviction for transferring marijuana was evidence of predisposition to rebut defense of entrapment).

knew in advance the price at which he would be able to purchase the crack that he intended to sell to Seay and Dessin, as well as the going price for resale on the street.[4]

In sum, Hanson's belated claim of entrapment was extremely weak, and we cannot say that the district court abused its discretion in declining to give it much weight as a factor favoring the withdrawal of Hanson's guilty plea.

## IV

The remaining factor to consider is whether Hanson's guilty plea was tainted. Hanson maintains that it was, by Daum's erroneous advice regarding the guidelines sentencing range that would govern Hanson's case if he accepted the plea. In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that a claim that the ineffective assistance of counsel rendered a plea not voluntary and intelligent must be evaluated under the general test for ineffective assistance set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Such a claim requires two showings. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

The government does not dispute that Daum's failure to take into account the career offender provisions of U.S.S.G. § 4B1.1 — and hence to recognize that Hanson's post-plea sentencing range would be 262 to 327 months rather than 121 to 151 — was constitutionally deficient. *See United States v. Booze*, 293 F.3d 516, 518 (D.C. Cir. 2002) ("This circuit has held that a lawyer who advises his client whether to accept a plea offer falls below the threshold of reasonable performance if the lawyer makes a plainly incorrect estimate of the likely sentence due to ignorance of applicable law of which he should have been aware." (internal quotation marks omitted)). We therefore proceed to the question of whether counsel's

---

[4] In addition, in a pre-plea interview with the prosecution, Hanson discussed his familiarity with several drug suppliers, provided information that ranged from their cell phone numbers to particulars of their drug operations, and stated that he had purchased narcotics from them. *See Hanson*, slip op. at 18 (June 19, 2002).

deficient performance prejudiced Hanson. Where the defendant attacks a plea bargain, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* We do not believe that Hanson has made that required showing.

First, the district court's admonition at the plea hearing that Hanson should not rely on sentencing predictions weakens the defendant's claim that those predictions were at the root of his decision to plead guilty. The court warned Hanson that it wouldn't "actually determine your guidelines sentence in your case until after . . . [the] presentence report," 9/21/99 Tr. at 6, that the court had authority "to impose a sentence that's more severe or less severe than the sentence called for by the guidelines," *id.*, and that Hanson shouldn't rely on "any prediction or promise as to what sentence you'll receive in this case" because "the Court doesn't know itself right now until after a presentence report is prepared," *id.* at 10. Hanson assured the court that he understood. In *United States v. Horne*, this circuit relied on a virtually identical set of warnings as a factor in concluding that the district court had not abused its discretion in denying a motion to withdraw a plea, notwithstanding the fact that — as was true here — defense counsel had substantially underestimated his client's guidelines range by misunderstanding the import of a prior Maryland felony conviction. 987 F.2d 833, 834–38 (D.C. Cir. 1993).[5]

Second, even if counsel had told Hanson that the applicable guidelines range was 262 to 327 months if he pled, Hanson

---

[5] *See also United States v. Watley*, 987 F.2d 841, 847 n.10 (D.C. Cir. 1993) (vacating a guilty plea, but noting that the case contrasted with *Horne* because "[i]n *Horne*, the district judge expressly told the defendant, before accepting his plea, that 'he should not rely upon any [sentencing] estimate made by his counsel or anyone else' " (quoting *Horne*, 987 F.2d at 836)).

would nonetheless have had reason to expect a sentence below that. As Hanson's plea agreement makes clear, he anticipated providing substantial assistance to the government in other narcotics investigations, which would have qualified him for a departure below both the guidelines range and the statutory minimum sentence. Plea Agreement ¶ 10(e); *see* U.S.S.G. § 5K1.1; 18 U.S.C. § 3553(e). Although Hanson ultimately broke his agreement to provide such assistance out of concern for his and his family's safety, we must evaluate what his likely decision would have been at the time of the plea — albeit with the hypothetical benefit of competent advice. And it is reasonable to expect that a competent attorney would have advised Hanson that he stood a good chance of obtaining a sentence well below the (correctly calculated) guidelines range if he followed through on his pledge of cooperation.

Third, had Hanson proceeded to trial and been convicted, his prior convictions would have dictated a mandatory life sentence. *See* 21 U.S.C. § 841(b)(1)(A). Although Hanson asserts that his counsel did not tell him and that he did not know he faced a life sentence at the time he agreed to plead guilty, there is evidence to the contrary.[6] In any event, in order to satisfy the prejudice requirement, Hanson must show that it is reasonably likely he would have insisted on going to trial "but for counsel's errors," *Hill*, 474 U.S. at 59, which means *all* of counsel's errors, not just some of them.

---

[6] This includes Daum's statement at the plea hearing that the government had agreed not to file an enhancement notice (which would have made the mandatory life provision applicable). It also includes the testimony of a police officer that, after Hanson's arrest, the officer told Hanson that he was facing "letters" not "numbers" — meaning a life sentence rather than a term of years — and that on hearing that information Hanson had lowered his head and "slouched." 11/9/01 Tr. at 60–61. On cross-examination, Hanson acknowledged that he knew what the phrase "letters not numbers" meant, but denied that anyone had told him that was what he faced. *Id.* at 40–41.

The *Hill/Strickland* inquiry focuses on what the defendant would have done had he been advised by a competent attorney, not one who was merely partially incompetent. And there is no question but that a competent attorney would have advised Hanson of the mandatory minimum sentence he faced. *See Booze*, 293 F.3d at 518–19.[7]

Finally, any competent attorney would also have advised Hanson that he stood little chance of obtaining an acquittal at trial. The evidence of his participation in the two drug transactions with which he was charged was overwhelming, while his only defense — entrapment — was exceedingly weak. To be sure, Hanson does not need to show that he would have *prevailed* at trial, only that there was a reasonable probability that he "would have *gone* to trial." *McCoy*, 215 F.3d at 108 (emphasis added). But any rational decision regarding the latter would have required a realistic assessment of the former. And we think it extremely doubtful that, had he been advised that the sentencing range for conviction after a guilty plea was 262 to 327 months, with a reasonable reduction anticipated for cooperation, Hanson (who was only 25 years old) would have chosen to go to trial despite the overwhelming likelihood that as a consequence he would spend the rest of his life in jail.

We conclude that Hanson has failed to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Accordingly, the district court

---

[7] As the defendant correctly notes, we reversed a district court's refusal to withdraw a guilty plea in *McCoy*, where the defendant also faced the risk of a mandatory life sentence if he lost at trial. But the defendant in *McCoy* did not have Hanson's advantage on the other side of the ledger: the opportunity for a reduced sentence if he pled guilty and cooperated with the government. In addition, in *McCoy* the district court not only did not warn the defendant against relying on sentencing predictions, it failed to advise him of the maximum statutory penalty. *See McCoy*, 215 F.3d at 105, 106, 108.

did not err in holding that Hanson's guilty plea was not tainted by the ineffective assistance of his counsel.

## V

For the foregoing reasons, we conclude that the district court did not abuse its discretion in denying Hanson's motion to withdraw his guilty plea. The judgment of that court is therefore

*Affirmed.*