# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Decided June 9, 2009

No. 08-3017

UNITED STATES OF AMERICA,
APPELLEE

v.

FRANK BERKELEY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 06cr00208-01)

*Billy L. Ponds* filed a brief for appellant. *Frank Berkeley*, pro se, filed supplemental briefs for appellant.

*Jeffrey A. Taylor*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese III*, *Mary B. McCord*, and *J.P. Cooney*, Assistant U.S. Attorneys, were on the briefs for appellee.

Before: GARLAND and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Frank Berkeley agreed to plead guilty to a single count of distributing cocaine base.  In exchange, the government agreed to drop a second count and to ensure that Berkeley would not be prosecuted for possession of a gun and drugs found at the scene of his arrest.  Before sentencing, Berkeley moved to withdraw his plea, arguing that his lawyer failed to inform him of an entrapment defense because of a conflict of interest, and that the lawyer's advice concerning his eligibility for early release constituted ineffective assistance of counsel.  After an evidentiary hearing, the district court denied the motion and sentenced Berkeley to 169 months in prison.  On appeal, Berkeley contends that the denial of his motion was an abuse of discretion, and that the imposition of his sentence was flawed.  We reject these contentions and affirm the judgment of the district court.[1]

I

On August 2, 2005, Harold Holden called Berkeley to inquire about purchasing approximately 62 grams of cocaine base ("crack").  Berkeley knew Holden to be the father of Berkeley's girlfriend, but did not know that Holden was also a government informant.  Moments after receiving Holden's call, Berkeley met him in the 1000 block of 44th Street, N.E. in Washington, D.C., and exchanged approximately 62 grams of crack for $1900 in cash.  The transaction was video- and audio-taped by agents of the Drug Enforcement Administration (DEA).

On September 21, 2005, Berkeley contacted Holden regarding an additional transaction for a similar quantity of

---

[1]This case was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties.  *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j).

crack. The two met in the 1700 block of Benning Road, N.E., where Holden introduced Berkeley to an undercover agent. Berkeley gave the agent approximately 62 grams of crack in exchange for $1700. The DEA again taped the transaction. As Berkeley conceded before the district court, "the videotapes and audiotapes unequivocally identified Berkeley as the person involved in both transactions." Def.'s Post-Hr'g Br. 1.

Based on these two transactions, a federal grand jury in the District of Columbia returned a two-count indictment, charging Berkeley with unlawful distribution of 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). An arrest warrant was issued, and on July 19, 2006, Berkeley was arrested outside his residence in Landover Hills, Maryland, as he attempted to enter a car registered to his stepfather. During the search incident to his arrest, agents found approximately 31 grams of suspected crack in Berkeley's pocket, as well as a 9mm handgun and $91,980 in cash in the vehicle.

Attorney Douglas Wood was Berkeley's first lawyer in the U.S. District Court, and he negotiated a plea agreement on Berkeley's behalf. Wood had represented Berkeley in three previous felony cases, two of which were dismissed and one of which resulted in misdemeanor convictions for drug possession. In a fourth case in 2000, Berkeley faced Maryland drug charges together with co-defendant Dennis Butler. In that case, Wood represented Butler while another attorney represented Berkeley.

On September 29, 2006, following a plea hearing under Rule 11 of the Federal Rules of Criminal Procedure, Berkeley pled guilty to Count One of the indictment. In return for the plea, the government agreed to dismiss the remaining count. It also pledged to secure declination letters from the Maryland State's Attorney's Office and the United States Attorney's

Office for the District of Maryland, agreeing not to prosecute Berkeley for the gun and drugs found at the time of his arrest. Plea Agreement ¶ 5.

The parties stipulated that a sentence within the applicable U.S. Sentencing Guidelines range would be reasonable in light of the statutory sentencing factors. *Id.* ¶ 10. The government agreed that a 3-level decrease in Berkeley's Guidelines offense level would be appropriate, pursuant to U.S.S.G. § 3E1.1, "[a]ssuming [Berkeley] clearly demonstrates acceptance of responsibility" for his offense. *Id.* ¶ 9. The agreement expressly reserved the government's right "to seek denial of the adjustment for acceptance of responsibility . . . should [Berkeley] move to withdraw [his] guilty plea after it is entered." *Id.* ¶ 11.

On February 2, 2007, after replacing Wood as counsel, Berkeley moved to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d). His principal contention was that Wood, because of a conflict of interest, had failed to advise him that he had an entrapment defense. Berkeley also contended that Wood had wrongly advised him that he would be placed in a Bureau of Prisons (BOP) drug treatment program that would allow his release from prison a year early.

The district court held an evidentiary hearing to address Berkeley's claims. According to Berkeley's testimony, Holden had sent him a letter demanding that he take part in the two drug transactions and threatening bodily harm to Berkeley and his family if he did not comply. This threat scared Berkeley, as Holden was "three times his size," Mot. Hr'g Tr. 16 (Aug. 9, 2007), and it was because of this threat from a government informant that Berkeley engaged in the drug deals. Berkeley testified that, although he told Wood about the letter, Wood said that Berkeley could not win the case and should agree to the

government's plea offer.  Berkeley further maintained that the reason Wood did not advise him that he had an entrapment defense was that such a defense would have required Wood to withdraw from the representation.  According to Berkeley, the government would have attempted to counter the entrapment defense by showing that he was predisposed to commit the crime -- and would have done so by calling for the testimony of the co-defendant in his 2000 drug case, Butler, whom Wood had represented.

Wood had a different account of his representation of Berkeley.  He testified that Berkeley "never told [him] he had [been] threatened by Mr. Holden," and that he "was not aware of any letter from Mr. Holden to Mr. Berkeley."  *Id.* at 123.  Faced with a strong case against his client and what he assessed as an attractive offer from the government, Wood advised Berkeley to accept the plea agreement.  In so doing, however, he warned Berkeley that he faced at least a 10-year mandatory minimum sentence. Wood said that he made no promises as to what the ultimate sentence would be, but that he advised Berkeley that he "could get maybe . . . six months to a year off as a result of a drug treatment program while incarcerated" if "the court recommended a drug treatment program and he was accepted" into it.  *Id.* at 115.  As Wood explained on the record at Berkeley's plea hearing, he also warned Berkeley that, because he was not a U.S. citizen, his conviction could result in deportation, although "[t]here [was] no INS detainer" at the time.  Plea Hr'g Tr. 6 (Sept. 29, 2006).

On October 16, 2007, the district court denied Berkeley's motion.  *United States v. Berkeley*, 515 F. Supp. 2d 159 (D.D.C. 2007).  The court credited Wood's testimony that Berkeley had never informed Wood of Holden's letter, and hence that Wood had no reason to believe that Berkeley had an entrapment defense.  Wood's advice to plead guilty, the court found, was

based on his judgment that "[g]iven the strength of the Government's case, and the Defendant's prior drug activities, . . . trial was not in the Defendant's best interest because of the heavy sentence he would most probably receive." *Id.* at 163. The court also found that, although Wood advised Berkeley that early release was possible if BOP placed him in a drug treatment program, he made no "promises that this would occur or that this was a statutory entitlement." *Id.* at 165.

The case then proceeded to sentencing. The U.S. Probation Office prepared a Presentence Investigation Report (PSR) that initially calculated Berkeley's total offense level as 34 and placed him in criminal history category III. PSR at 21. The calculation was based on a base offense level of 30, *see* U.S.S.G. § 2D1.1(c)(5), a 2-level enhancement for obstruction of justice, *see id.* § 3C1.1, and an additional 2-level enhancement for possession of a weapon, *see id.* § 2D1.1(b)(1). PSR at 6. The PSR did not incorporate a reduction for acceptance of responsibility because Berkeley had moved to withdraw his guilty plea, and because an enhancement for obstruction of justice is generally inconsistent with a reduction for acceptance of responsibility. *See id.* (citing U.S.S.G. § 3E1.1 cmt. n.4).

At the February 12, 2008, sentencing hearing, both parties agreed that the enhancement for possession of a weapon was inappropriate and that Berkeley's Guidelines level was at most 32. Berkeley argued for an additional 3-level reduction for acceptance of responsibility, but the district court rejected that argument. It found that "[t]he motion to withdraw a guilty plea in and of itself is a statement that Mr. Berkeley did not wish to let the guilty plea stand, and therefore, he didn't wish to accept responsibility for this offense," and that the reduction was also unwarranted because of Berkeley's false statements at the evidentiary hearing. Sentencing Hr'g Tr. 13-14 (Feb. 12, 2008). The court therefore calculated the offense level to be 32 and the

applicable Guidelines range to be 151-188 months. *Id.* at 14. The court imposed a sentence of 169 months' imprisonment, followed by five years of supervised release. *Id.* at 18.

Berkeley filed a notice of appeal on February 19, 2008. Initially, Berkeley's briefs, prepared by counsel, addressed only the district court's denial of his motion to withdraw his plea. We subsequently granted Berkeley leave to file a *pro se* supplemental brief, in which he challenged the district court's calculation of his Guidelines range. *United States v. Berkeley*, No. 08-3017, Order (D.C. Cir. Sept. 26, 2008). We address both issues below.

## II

A defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Although "[w]ithdrawal of a guilty plea prior to sentencing is to be liberally granted," *United States v. Taylor*, 139 F.3d 924, 929 (D.C. Cir. 1998), we review a district court's refusal to permit withdrawal only for abuse of discretion, *United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003). "In reviewing such a refusal, we consider three factors: '(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted.'" *United States v. Curry*, 494 F.3d 1124, 1128 (D.C. Cir. 2007) (quoting *Hanson*, 339 F.3d at 988). In this appeal, Berkeley does not assert that he has a viable claim of innocence,[2] and the government does not suggest that it would

---

[2]Although an entrapment defense may form the basis for a viable claim of innocence, *see Hanson*, 339 F.3d at 988, Berkeley instead

be prejudiced by being forced to go to trial. We therefore focus our review on the third factor -- which we have described as the "'most important.'" *Taylor*, 139 F.3d at 929 (quoting *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993)).

Berkeley's claim that his plea was tainted is premised on what he says was ineffective assistance of counsel, a deficiency that can render a plea involuntary. *See Hanson*, 339 F.3d at 990. Such a challenge to a guilty plea "must be evaluated under the general test for ineffective assistance set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Curry*, 494 F.3d at 1129 (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). Ordinarily, this requires two showings by the defendant: "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Id.* (quoting *Strickland*, 466 U.S. at 687). Under *Cuyler v. Sullivan*, however, "[p]rejudice is presumed . . . if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980)).

Berkeley alleges two deficiencies in his trial counsel's performance. First, he maintains that Wood labored under a conflict of interest, thus implicating the less demanding *Cuyler* standard. Second, he claims that Wood misadvised him concerning his eligibility for early release, a claim that requires Berkeley to meet both prongs of the *Strickland* test. We consider each argument in turn.

---

bases his appeal on the claim that his plea was tainted by his lawyer's conflict and ineffectiveness. He alleges an entrapment defense only to further his conflict argument.

Berkeley's conflict-of-interest argument is based on the following chain of logic: Berkeley told Wood that he engaged in the crack transaction because Harold Holden, who was cooperating with the government, had threatened him. Berkeley therefore had an entrapment defense that Wood failed to pursue. Wood failed to pursue this defense because he knew that the government, in order to establish predisposition to commit the crime and thereby defeat the defense, *see Hanson*, 339 F.3d at 988, would have called for the testimony of Dennis Butler, Wood's client and Berkeley's co-defendant in the 2000 drug case. Because the ensuing conflict would have required Wood to withdraw from representing Berkeley, and because Wood did not want to lose the work, he avoided pursuing the entrapment defense that would have led him down that path.

Berkeley's conflict argument founders on its factual premise -- that Berkeley advised Wood of Holden's threat. Without that predicate, Berkeley's logical chain collapses: If Wood did not know of the threat, he would have had no reason to think that an entrapment defense was available. If he had no reason to know such a defense was available, he would have had no reason to know of the conflict that Berkeley claims would have resulted from its assertion. And because an unknown conflict could not have "adversely affected [Wood's] performance," the *Cuyler* standard cannot be met. *Cuyler*, 446 U.S. at 348.

Although Berkeley testified at the evidentiary hearing that he informed Wood of Holden's threatening letter, Mot. Hr'g Tr. 16, Wood testified to the contrary, *id.* at 123, 136, 143, 144, 146. The district court resolved the dispute in favor of Wood's testimony, finding that Berkeley never informed Wood of this predicate for an entrapment defense. *Berkeley*, 515 F. Supp. 2d at 164. We review such a factual finding for clear error only, *United States v. Eli*, 379 F.3d 1016, 1019 (D.C. Cir. 2004), and

we find none. Because Wood's performance could not have been adversely affected by information he never possessed, Berkeley's conflict-of-interest argument must fail.

Berkeley's second argument, that Wood misadvised him regarding the possibility of early release, fares no better. According to Berkeley, Wood advised him that he would be eligible to receive up to a year of early release by participating in a substance abuse treatment program under 28 C.F.R. § 550.58 (2008). Pursuant to that regulation, "INS detainees" were ineligible for such early release, *id.* § 550.58(a)(i),[3] and Berkeley contends that he is certain to be subject to such a detainer due to his immigration status.

Even if we assume for purposes of argument that Wood's advice was constitutionally infirm, Berkeley has not shown prejudice under *Strickland*'s second prong. As we have previously explained, "[w]here the defendant attacks a plea bargain, the prejudice inquiry 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *Hanson*, 339 F.3d at 990 (quoting *Hill*, 474 U.S. at 59). "'[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill*,

---

[3]The Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), abolished the Immigration and Naturalization Service (INS) and transferred its enforcement responsibilities to the Bureau of Immigration and Customs Enforcement (ICE). The government explains, without contradiction, that "INS detainees" in 28 C.F.R. § 550.58 should now be read as "ICE detainees." *See* Appellee's Br. 7 n.3; *see also* 28 C.F.R. § 550.55 (current version of former § 550.58).

474 U.S. at 59) (alteration in original). Berkeley cannot make that showing.

Any competent attorney would have advised Berkeley that he stood little chance of obtaining an acquittal if he went to trial on the indictment filed against him in the District of Columbia, and a good chance of receiving a higher sentence than if he pled guilty. The video- and audio-tape evidence of his participation in the two drug transactions was overwhelming, and -- as the district court found -- Berkeley did not tell counsel that he had a defense. Nor was there any reason to believe that Berkeley would have had a successful defense to the gun and drug charges that could have been filed against him in Maryland. There, based on the crack found in his pocket alone, Berkeley faced a mandatory minimum sentence of 5 years, 21 U.S.C. § 844(a), and a Guidelines range of 78-97 months, *see* U.S.S.G. § 2D1.1(c)(7); U.S.S.G. ch. 5, pt. A (sentencing table). In return for pleading guilty in D.C., the government agreed to ensure that Berkeley would not face charges in Maryland. Plea Agreement ¶ 5.

Berkeley "does not affirmatively allege, much less establish to a reasonable probability, that he would have chosen to go to trial" despite the risks, *United States v. Scott*, 64 Fed. Appx. 781, 782 (D.C. Cir. 2003), if only he had known that the advice the court found Wood gave him -- that he "*could* be placed in a Bureau of Prison[s] drug treatment program which, *if* completed successfully, *could* allow him to be released from prison" up to a year early -- was incorrect. *Berkeley*, 515 F. Supp. 2d at 165 (emphases added). Accordingly, Berkeley "cannot prevail on his ineffective assistance of counsel claim." *Scott*, 64 Fed. Appx. at 782; *see United States v. Horne*, 987 F.2d 833, 835-36 (D.C. Cir. 1993) (holding that the defendant could not prove prejudice from alleged ineffective assistance because he "has never claimed that but for counsel's errors he would have

pleaded not guilty and insisted upon going to trial"); *see also Curry*, 494 F.3d at 1131; *In re Sealed Case*, 488 F.3d 1011, 1016 (D.C. Cir. 2007); *Hanson*, 339 F.3d at 991-92.

III

In a *pro se* supplemental brief that we granted Berkeley leave to file, he raises two further arguments, both challenges to his sentence. Our review of sentencing decisions is limited. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court "invalidated both the statutory provision, 18 U.S.C. § 3553(b)(1) (2000 ed., Supp. IV), which made the Sentencing Guidelines mandatory, and § 3742(e) (2000 ed. and Supp. IV), which directed appellate courts to apply a *de novo* standard of review to departures from the Guidelines." *Gall v. United States*, 128 S. Ct. 586, 594 (2007). As a consequence, "the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" *Id.*

We review the reasonableness of a sentence in two steps. First, we must "ensure that the district court committed no significant procedural error, such as . . . improperly calculating . . . the Guidelines range [or] treating the Guidelines as mandatory." *Id.* at 597. Second, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* Berkeley's challenges involve only the accuracy of the district court's Guidelines calculations.

Berkeley's primary contention is that the court erred in refusing to decrease his offense level for acceptance of responsibility. Because the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] . . . the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 cmt. n.5.

13

The district court concluded that "[t]he motion to withdraw a guilty plea in and of itself is a statement that Mr. Berkeley did not wish to let the guilty plea stand, and therefore, he didn't wish to accept responsibility for this offense." Sentencing Hr'g Tr. 13-14. Berkeley insists that this was error because he wished only to assert an entrapment defense and continued to admit to "his guilt and involvement in the instant offense." Appellant's Supp. Br. 4. Yet, by simultaneously claiming that he accepted responsibility but that he was entrapped, Berkeley was "in effect claiming that he accept[ed] responsibility even though he was not responsible." *United States v. Kirkland*, 104 F.3d 1403, 1405 (D.C. Cir. 1997). "It may be that a situation could be presented in which an entrapment defense is not logically inconsistent with a finding of a defendant's acceptance of responsibility," but Berkeley did not automatically earn the acceptance credit simply by claiming entrapment as his only defense. *Id.* at 1406. Moreover, the district court "didn't think that Mr. Berkeley was telling the truth" about his alleged entrapment defense, and the court made "very specific findings about that." Sentencing Hr'g Tr. 14. Under these circumstances, the court was more than justified in denying an offense-level reduction for acceptance of responsibility. *Cf. United States v. Mendoza*, 42 Fed. Appx. 471, *1 (D.C. Cir. 2002) ("The district court did not clearly err in denying appellant a downward adjustment for acceptance of responsibility in light of the court's determination . . . that appellant untruthfully denied relevant conduct."); *United States v. Taylor*, 937 F.2d 676, 680 (D.C. Cir. 1991) (affirming a denial of credit for acceptance of responsibility where the court found that the defendant had not been "truthful and complete" in explaining the circumstances of his crime).

Finally, we briefly address Berkeley's further contention that he was denied the benefit of a November 1, 2007 Guidelines amendment aimed at ameliorating the disparity between crack

14

and powder cocaine sentences.   *See* U.S.S.G. app. C, amend. 706.   Prior to the amendment, an offense like Berkeley's, involving 50 to 150 grams of crack, would have resulted in a base offense level of 32; following the amendment, it results in a base offense level of 30.  *Compare* U.S.S.G. § 2D1.1(c)(4) (2006), *with* U.S.S.G. § 2D1.1(c)(5) (2007).  Here, the district court properly calculated Berkeley's base offense level as 30, pursuant to the amended Guidelines.   The court calculated Berkeley's total offense level as 32, but this was based on a two-level obstruction-of-justice enhancement that was unaffected by the amendment.  Sentencing Hr'g Tr. 6, 13-14.  Hence, there was no error in the court's sentencing calculation.[4]

IV

Because the district court neither abused its discretion in denying Berkeley's motion to withdraw his guilty plea, nor committed error in calculating Berkeley's sentence, the court's judgment is

*Affirmed.*

[4]Berkeley argues in his supplemental reply brief that imposing an obstruction-of-justice enhancement was an abuse of discretion. Appellant's Supp. Reply Br. 8.  Arguments made in reply briefs, particularly supplemental reply briefs, come too late for our consideration. *See Hwang Geum Joo v. Japan*, 413 F.3d 45, 49 n.* (D.C. Cir. 2005); *United States v. Johnson*, 216 F.3d 1162, 1168 (D.C. Cir. 2000).