**UNITED STATES of America,
Appellee,**

v.

**Michael McCOY, Appellant.**

No. 99–3088.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 14, 2000.

Decided June 23, 2000.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs were A. J. Kramer, Federal Public Defender, and Evelina J. Norwinski, Assistant Federal Public Defender.

Rachel A. Pierson, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Gregg A. Maisel and Mary-Patrice Brown, Assistant U.S. Attorneys,

Before: GINSBURG, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Concurring opinion filed by Circuit Judge HENDERSON.

GINSBURG, Circuit Judge:

Michael McCoy pleaded guilty to conspiring to distribute and to possess with intent to distribute cocaine base. Prior to sentencing, however, McCoy moved to withdraw his plea. The district court denied the motion and sentenced McCoy to 262 months in prison, to be followed by five years of supervised release. Upon appeal McCoy contends that the district court abused its discretion by denying his request to withdraw his plea.

We find McCoy's plea was not voluntary, and he has presented legally cognizable defenses to the charges against him. In addition, the Government has conceded that its ability to prosecute him has not been prejudiced. We hold that in these circumstances the district court abused its discretion by denying McCoy's motion to withdraw his plea of guilty.

## I. Background

The grand jury indicted McCoy on one count of conspiracy to distribute and to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846, and on one count of distribution of five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841 (a)(1) & (b)(1)(B)(iii). McCoy and his co-defendant, Bernard Sanders Jr., soon began to negotiate a plea agreement with the Government, which made the following proposal: McCoy would (1) plead guilty to the conspiracy charge; (2) be held accountable for between 150 and 500 grams of cocaine base; and (3) be sentenced in accordance with the United States Sentencing Guidelines. The Government also informed McCoy that if he chose to proceed to trial, then the Government intended to file an information pursuant to 21 U.S.C. § 851 regarding his previous two felony drug convictions and that, should he be convicted after trial, he would be sentenced as a career offender to a mandatory term of life imprisonment. After further negotiations with the Government yielded no better terms, McCoy signed an agreement sub-

stantially identical to the Government's original proposal.

Before McCoy agreed to plead guilty, his counsel had determined that he would face from 188 to 235 months in prison if he accepted the Government's offer. Counsel had arrived at that conclusion by consulting the drug quantity table in U.S.S.G. § 2D1.1(c)(3) and determining that McCoy's base offense level would be 34; after a three point reduction to reflect McCoy's acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a) & (b), his total offense level would be 31. Although the matter is not entirely clear from the record, counsel apparently had understood that under § 4B1.1 of the Guidelines McCoy would be treated as a "career offender" and therefore assigned a criminal history category of VI. *See* U.S.S.G. § 4B1.1. Quite clearly, however, counsel did not realize that § 4B1.1 also enhances the base offense level of a career offender; because McCoy would be pleading guilty to a crime for which the maximum penalty is life imprisonment, *see* 21 U.S.C. §§ 841(b)(1)(A)(iii) & 846, his base offense level would be 37 rather than 34. *See* U.S.S.G. § 4B1.1. McCoy's sentence would therefore be in the range of 262 to 327 months of imprisonment, not the 188 to 235 months predicted by McCoy's counsel. *See* U.S.S.G. Ch. 5, Pt. A (table). The miscalculation committed by McCoy's counsel had been reinforced when the prosecutor, in response to an inquiry from counsel for McCoy, likewise had estimated the applicable sentencing range at 188 to 235 months.

At a hearing held for the purpose of accepting McCoy's plea, the court informed McCoy of the minimum statutory penalty he faced but not of the maximum statutory penalty, nor of the applicable sentencing range under the Guidelines. At the same proceeding the Government claimed that if McCoy went to trial, it could prove the following facts:

> On July 9, 1998 Sanders arranged to sell 62 grams of cocaine base to an undercover agent of the Drug Enforcement Agency. That same evening McCoy met the undercover agent, told him he did not have the full 62 grams, and sold him 44.5 grams of cocaine base. McCoy also gave the agent a pager number to be used to arrange future transactions. Several months later a confidential informant for the DEA contacted Sanders to purchase 125 grams of cocaine base. Sanders agreed to meet the informant at a shopping mall in Maryland on October 6, 1998; he arrived at the appointed time in a car driven by McCoy. Upon meeting the informant, however, Sanders was uneasy and he canceled the sale and left with McCoy. The police followed Sanders and McCoy for a few miles and then arrested them. Prior to being stopped, Sanders threw from the car a bag containing 119.6 grams of cocaine base.

McCoy admitted the Government's account was true and accurate and he accepted responsibility for between 150 and 500 grams of cocaine base. The court then accepted his plea.

It was not until after the plea hearing, when McCoy received the presentence report, that he discovered he was facing a higher sentencing range than his attorney and the prosecutor had previously indicated. After realizing his mistake but still prior to sentencing, McCoy filed a motion to withdraw his plea of guilty. He argued that an "important element of [his] willingness to plead guilty was based on [his] counsel's, along with the attorney for the government's, calculation of [his] total sentence." Although he remained willing to plead to a charge with a possible sentence of from 188 to 235 months in prison, he stated that "in deliberating over the issue of whether to forego a trial or enter into a plea agreement, he did not contemplate the fact that he would be submitting himself to a sentence with a minimum imposition of 22 years and a maximum sentence of 27–1/2 years." Because he had misunderstood the applicable sentencing range when he entered his plea, McCoy argued,

his plea had been involuntary and hence unconstitutional. The Government opposed the motion upon the grounds that McCoy's plea had not been involuntary and that he had not presented a legally cognizable defense to the charges against him. The Government conceded, however, that the passage of time since McCoy pleaded guilty had not "in any way prejudiced its case."

In response, McCoy asserted his innocence and argued that he had done so throughout the negotiations over the plea agreement. McCoy specifically noted that he had filed a motion challenging the undercover agent's identification of him as the seller in the transaction that took place on July 9, based in part upon evidence that other officers at the scene had indicated in their surveillance notes that the seller was a "white male," whereas McCoy is a black male. (At the sentencing hearing the prosecutor conceded that McCoy had consistently claimed he was unaware, when he drove Sanders to the shopping mall, that Sanders intended to sell drugs; according to McCoy, it was not until they left the mall that he "was aware that a transaction either had been planned or that that was the purpose of Mr. Sanders' trip there.")

The district court denied McCoy's motion to withdraw his plea. The court discounted McCoy's claim of innocence because, when the court had accepted his plea, McCoy had admitted that the Government's allegations were true and gave as one of his reasons for pleading guilty that he had committed the crime charged. After acknowledging the Government's concession that it would not be prejudiced by proceeding to trial, the court also rejected McCoy's argument that he would not have pleaded guilty if he had known the actual sentencing range to which he was exposed. The court discounted McCoy's claimed reliance upon the range his attorney had told him would apply if he pleaded guilty because McCoy's plea agreement explicitly stated that he had not been promised a specific sentence and

McCoy stated when pleading guilty that he had not been made any promise outside of the plea agreement. Additionally, the court noted that in his motion to withdraw McCoy had characterized his counsel's representations about his sentencing range as "approximate." Therefore, the court concluded that McCoy's plea had not been contingent upon a specific sentencing range, denied his motion to withdraw the plea, and sentenced him to 262 months of imprisonment, to be followed by five years of supervised release.

## II. Analysis

McCoy argues upon appeal that the district court abused its discretion by denying his motion to withdraw his plea: "Withdrawal of a guilty plea prior to sentencing is to be liberally granted, and permitted for 'any fair and just reason.'" *United States v. Taylor*, 139 F.3d 924, 929 (D.C.Cir.1998) (quoting Fed.R.Crim.P. 32(e)). In reviewing the district court's denial of a motion to withdraw we focus upon three factors: "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." *Id.* Because the Government concedes the second factor, we confine our analysis to the remaining two.

### A. Legally Cognizable Defense

A defendant seeking to withdraw his plea of guilty "generally must make out a legally cognizable defense to the charge against him." *United States v. Cray*, 47 F.3d 1203, 1207 (D.C.Cir.1995). The defendant's "general denial" is not enough; he must "affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right to try his luck before a jury." *Id.*

McCoy has adequately presented cognizable defenses to the charges against him. As recounted above, the grand jury

indicted McCoy on two counts: (1) conspiracy to distribute and to possess with intent to distribute 50 grams or more of cocaine base; and (2) distribution of 5 grams or more of cocaine base. The latter charge is based upon the alleged sale of 44.5 grams of cocaine base on July 9, 1998; the conspiracy charge is premised upon both the July sale and the failed sale of 119.6 grams of cocaine base in October 1998.

As for the July sale, McCoy has consistently argued that the police mistakenly identified him as the seller. This defense, if accepted by the jury, obviously would preclude conviction upon the charge of distribution and would eliminate part of the basis for the charge of conspiracy.

■ As for the failed transaction of October 6, McCoy maintains that he did not know Sanders intended to sell cocaine base and that he did not realize "something was not proper" until the police stopped his vehicle. To convict McCoy of conspiracy under 21 U.S.C. § 846 the Government must prove he had "the specific intent to further the common unlawful objective" of the conspiracy. *United States v. Childress*, 58 F.3d 693, 707–08 (D.C.Cir.1995). McCoy's claim that he did not know Sanders intended to sell cocaine base on October 6 amounts to an assertion that he lacked the requisite intent to conspire with Sanders. If a jury was to conclude the Government has not proved beyond a reasonable doubt that McCoy did participate in the sale on July 9, and to accept his claim that he lacked specific intent to conspire with Sanders on October 6, McCoy could not be convicted of the charge of conspiracy. Accordingly, we hold that McCoy has presented a legally cognizable defense to each of the charges against him.

### B. Involuntariness of the Plea

■ Prior to sentencing the "standard for allowing withdrawal of a plea is fairly lenient when the defendant can show that the plea was entered unconstitutionally." *Taylor*, 139 F.3d at 929; *see Cray*, 47 F.3d at 1207. McCoy contends that his plea was entered unconstitutionally because it was based upon legal assistance so defective as to deprive him of his constitutional right to assistance of counsel. A plea of guilty is constitutionally valid if and only if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see United States v. Loughery*, 908 F.2d 1014, 1019 (D.C.Cir. 1990). A plea based upon advice of counsel that "falls below the level of reasonable competence such that the defendant does not receive effective assistance," *Loughery*, 908 F.2d at 1019, is neither voluntary nor intelligent. *See Taylor*, 139 F.3d at 929.

■ In order to show that his plea was based upon constitutionally deficient assistance of counsel, the defendant must "ordinarily satisfy the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Id.* He must show: (1) "that his counsel's performance 'fell below an objective standard of reasonableness' by identifying specific 'acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment'"; and (2) "'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 929–30. In this context, a "reasonable probability" is one "sufficient to undermine confidence" in the defendant's decision to plead guilty. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see Hill*, 474 U.S. at 59, 106 S.Ct. 366.

■ Usually a claim of "ineffective assistance of counsel ... require[s] an evidentiary hearing"; indeed, where the defendant did not raise the claim before the district court, our standard practice is to remand for such a hearing. *United States v. Gaviria*, 116 F.3d 1498, 1513 (D.C.Cir. 1997). In this case, however, "the record is so clear that remand is unnecessary," *United States v. Soto*, 132 F.3d 56, 59

(D.C.Cir.1997); this court can confidently resolve McCoy's claim in the first instance.

■ McCoy contends that his counsel's performance "fell below an objective standard of reasonableness" because she failed correctly to apply the career offender provisions of the Guidelines when determining the sentencing range McCoy would face if he accepted the Government's plea agreement. His claim finds ample support in precedent. In *Gaviria* one defendant had refused to plead guilty to the charge of conspiracy to distribute narcotics because his counsel had informed him that he would be treated as a career offender under the Guidelines and be subject to a sentence of 360 months to life in prison. *See* 116 F.3d at 1512. Almost a year earlier, however, we had held in *United States v. Price*, 990 F.2d 1367, 1370 (1993), that a conspiracy conviction did not count as a predicate crime for purposes of the career offender provisions of the Guidelines. Because the defendant's counsel failed to realize that *Price* precluded treating the defendant as a career offender, we held counsel's performance was constitutionally deficient. *See id.*

■ The mistake McCoy's counsel made was even more egregious than that made in *Gaviria*. Whereas counsel in *Gaviria* had failed to find and apply a case interpreting the Guidelines, McCoy's counsel failed to follow the formula specified on the face of the Guidelines. Of course not every error made in applying the Guidelines amounts to deficient performance under the standard of *Strickland* but, as a sister circuit pointed out some years ago in a case very similar to this, "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). We therefore hold that McCoy has demonstrated that his counsel's performance was constitutionally deficient.

■ McCoy has also satisfied the second part of the *Strickland* test: He has shown a "reasonable probability" that but for his counsel's mistake he would not have pleaded guilty. Counsel told McCoy that by accepting the plea he would get a prison sentence in the range from 188 to 235 months; in fact, he faced a range of 262 to 327 months. The difference between counsel's predicted range and McCoy's actual range—more than six years between the respective low ends and almost eight years between the respective high ends—is significant.

The Government argues, however, that McCoy probably would have pleaded guilty even if he had known the actual sentencing range he faced; he was never promised a specific sentence prior to entering his plea, and he was facing a mandatory life sentence if convicted after trial. But, as has been pointed out before, a "defendant's understanding of the maximum penalties he will face if he enters a guilty plea may be of critical importance to the ... decision to accept the Government's offer rather than assume the risks of a trial." *United States v. Horne*, 987 F.2d 833, 840 (1993) (Buckley, J. concurring). Although McCoy was never promised a specific sentence if he pleaded guilty, it is undisputed that both his own attorney and the prosecutor in this case told him that the applicable sentencing range would be from 188 to 235 months and he credibly argues that he relied—understandably, we might add—upon that information. To be sure, McCoy has not proven he would have gone to trial had his (or the Government's) counsel not given him incorrect information, but he has demonstrated a "reasonable probability" that he would have done so.

We conclude that McCoy's decision to plead guilty was not "a voluntary and intelligent choice among the alternative courses of action open to [him]." We therefore hold that his conviction is unconstitutional.

## III. Conclusion

For the foregoing reasons, we remand this case to the district court with instruc-

tions to grant McCoy's motion to withdraw his plea of guilty.

*It is so ordered.*

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring:

I agree with the majority that the appellant has satisfied the second prong of the *Strickland v. Washington* prejudice test, but only barely. It seems unlikely, given the evidence against him, the appellant would *actually* have chosen to risk trial and mandatory life imprisonment rather than add 27 months to the 235 months he had already agreed to serve. Nevertheless, the *Strickland* test requires only a *reasonable* probability. Because the appellant has met this standard, I concur in the majority opinion.