# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 2, 2006          Decided June 1, 2007

No. 05-3030

IN RE: SEALED CASE

---

Appeal from the United States District Court
for the District of Columbia
(No. 98cr00074-01)

---

*Lisa B. Wright*, Assistant Federal Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender.

*Suzanne G. Curt*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: GARLAND and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The defendant in this case pled guilty to one count of possession with intent to distribute 50 grams or more of cocaine base. He now seeks to vacate his sentence on the ground that his trial counsel was ineffective in failing to accurately advise him of his sentencing range under the United States Sentencing Guidelines. Assuming without

deciding that counsel's representation was deficient, we conclude that the defendant was not prejudiced by that deficiency. We therefore affirm the district court's denial of his motion to vacate his sentence.

I

On November 24, 1997, the defendant sold a buyer 11.6 grams of cocaine base ("crack"). The sale took place in a grocery store parking lot, inside the buyer's car. Unbeknownst to the defendant, the buyer was an undercover law enforcement officer, and the transaction was caught on tape.

On March 5, 1998, a grand jury issued an indictment charging the defendant with two counts of unlawful use of a telephone to facilitate the distribution of cocaine base, in violation of 21 U.S.C. § 843(b) (Counts 1 and 2), and one count of distributing five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count 3). On March 10, agents of the Drug Enforcement Agency and officers of the United States Park Police arrested the defendant on the indictment and executed a search warrant at his apartment. In the course of the search, the police found two semi-automatic pistols and approximately 100 grams of crack. On March 19, the grand jury issued a superseding indictment charging the defendant with the three above-mentioned counts, as well as two additional counts: possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) (Count 4); and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 5).

On July 21, 1998, with the advice of counsel, the defendant entered into a plea agreement with the government. The defendant agreed to plead guilty to Count 4 of the indictment,

possession with intent to distribute 50 grams or more of cocaine base, which was based on the drugs found in the defendant's apartment. He also agreed to cooperate with law enforcement authorities "in any matter as to which the Government deem[ed] the cooperation relevant." Plea Agreement ¶ 6(a). For its part, the government agreed, inter alia, to: (i) dismiss the remaining counts of the indictment; (ii) consent to a three-level decrease in the defendant's offense level under the United States Sentencing Guidelines for acceptance of responsibility, *see* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (1998) [hereinafter U.S.S.G.]; and (iii) file a motion, pursuant to U.S.S.G. § 5K1.1, for a downward departure from the defendant's Sentencing Guidelines range if it "determine[d] that [the defendant] has provided substantial assistance in the investigation or prosecution of another person who has committed an offense," Plea Agreement ¶ 20. The plea agreement noted that the defendant's mandatory minimum sentence for the crime to which he was pleading guilty was ten years' imprisonment, that the maximum possible sentence was life, and that the ultimate sentence would be imposed in accordance with the Sentencing Guidelines. The agreement further stated that the defendant understood that the sentence was within the sole discretion of the court, and that he would not be allowed to withdraw from the guilty plea due to the harshness of the sentence.

On July 24, 1998, the district court held a plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Among other things, the court asked the defendant whether he understood that he faced a mandatory minimum term of ten years in prison and a maximum term of life. The defendant stated that he understood. The court then discussed the Sentencing Guidelines, telling the defendant that the court would not "actually be able to determine the guideline range in your case until after a presentence report has been completed," and that the court had "authority in some circumstances to

impose a sentence that is more severe or less severe than the sentence called for by the guidelines." Plea Hr'g Tr. 7 (July 24, 1998). The court asked the defendant whether he understood that "the sentence will be up to the Court," and asked whether anyone had "made any prediction or promise as to what sentence" the court would impose. *Id.* at 9. The defendant stated that he understood and that no one had made any predictions about his sentence. The court again warned that the defendant could not rely on any predictions because "I don't know myself right now until I get the presentence report." *Id.* The defendant confirmed his understanding.

Next, the court asked the government for a proffer of the evidence that it would have presented at trial. The government stated that its evidence would have established, among other things, that the defendant sold approximately 11 grams of crack to an undercover officer, and that a later search of the defendant's residence turned up approximately 100 more grams of crack, as well as two semi-automatic pistols. The court asked whether the defendant was "essentially in agreement with" the government's version of events, and the defendant stated that he was. *Id.* at 10. Finally, the court asked whether the defendant was guilty of the crime charged in Count 4 of the indictment. After the defendant stated that he was, the court accepted his plea of guilty.

The United States Probation Office prepared its first Presentence Investigation Report (PSR) on November 5, 1998. The report calculated the defendant's base offense level as 32, because the offense involved 50 to 150 grams of crack. *See* U.S.S.G. § 2D1.1(c)(4). After adjusting upward two levels because of the pistols, *see id.* § 2D1.1(b)(1), and downward three levels because the defendant accepted responsibility for the offense, *see id.* § 3E1.1, the PSR settled upon a final offense level of 31. The PSR also calculated the defendant's criminal

history, which included two prior felony convictions, as Category IV. The resulting sentencing range was 151 to 188 months' incarceration. *Id.* ch. 5, Pt. A (sentencing table).

Upon receipt of the initial PSR, the government advised the Probation Office that the report failed to account for the defendant's status as a career offender, which derived from the fact that his two prior convictions were for "controlled substance offenses." *Id.* § 4B1.1. In 1990, the defendant had been convicted of attempted distribution of cocaine in the Superior Court of the District of Columbia. In 1993, he was convicted in the same court of attempted possession with intent to distribute cocaine.

The Probation Office revised the PSR accordingly. Under the career offender guideline, § 4B1.1, the defendant's base offense level was 37, because the statutory maximum sentence for the offense to which he pled guilty was life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A); U.S.S.G. § 4B1.1. After adjusting downward three points for acceptance of responsibility, the revised PSR fixed the defendant's final offense level at 34. The defendant's criminal history category under the career offender provision was VI. *See* U.S.S.G. § 4B1.1. In contrast to the initial PSR's sentencing range of 151 to 188 months, the sentencing range generated by the revised offense level and criminal history category was 262 to 327 months. *Id.* ch. 5, Pt. A (sentencing table).

At a status hearing held by the court on November 23, 1998, defense counsel requested a continuance so that the defendant could "get his head together" in light of the "major change in the time he may get." Status Hr'g Tr. 2, 3 (Nov. 23, 1998). The court delayed sentencing two more times so that the defendant could research the issues surrounding his sentencing. At some point, the prosecutor also advised defense counsel that, although

the defendant had attempted to cooperate with the government, he did not have enough information to provide substantial assistance, and that the government would therefore be unable to file a motion supporting a downward departure from the Guidelines.

The sentencing hearing was finally conducted on February 5, 1999. The hearing began with the defense asking the court to allow the defendant to withdraw his guilty plea and go to trial. The defendant told the court that his "understanding was that the plea bargain would afford [him] the time of about 10 years, not knowing what the presentence report would reveal," but that "about 10 years is a far cry different from more than twice as much, which is what my guidelines call for from the presentence report." Sentencing Hr'g Tr. 5 (Feb. 5, 1999). The defendant concluded:

> All the counts I'm not guilty of. There are counts that I am guilty of, but not all of them. I have remorse for that because I did time on that before. . . . So I do have to own up to my responsibility [for] the counts that I know that I did commit that were wrong, but I did not commit all of the counts.

*Id.* at 6. The court, however, denied the defendant's motion to withdraw the plea, finding that the defendant had "understood the plea bargain" and "voluntarily accepted it." *Id.* It then sentenced the defendant to 262 months in prison, the bottom of the Guidelines range. *Id.*[1]

---

[1] The defendant was sentenced under the mandatory Sentencing Guidelines regime that was in effect prior to the Supreme Court's decision in *United States v. Booker*, a decision that rendered the Guidelines "effectively advisory." 543 U.S. 220, 245 (2005). He does not raise any argument based on *Booker* on this appeal.

On direct appeal to this court, with the assistance of new counsel, the defendant argued that a provision in the plea agreement waiving his right to seek a downward departure from the Guidelines was unenforceable because he had not knowingly waived that right. A panel of this court rejected the appeal, noting that the defendant did not challenge the provision in the district court, and that even on appeal he did not identify any ground for a downward departure. *See In re Sealed Case*, No. 99-3028, 2000 WL 815995 (D.C. Cir. May 16, 2000) (unpublished opinion). The Supreme Court denied the defendant's petition for a writ of certiorari on November 13, 2000. *Sealed Petitioner v. United States*, 531 U.S. 998 (2000).

On November 12, 2001, the defendant filed a motion in the district court, pursuant to 28 U.S.C. § 2255, seeking to vacate his sentence on the ground that his trial counsel failed to provide effective assistance when he entered into the plea agreement. The defendant asserted that counsel did not advise him that he qualified as a career offender under the Sentencing Guidelines, or that his Guidelines range would be 262 to 327 months. Indeed, the defendant charged that his lawyer failed to give him any estimate of his Guidelines exposure at all, telling him that until the Probation Office prepares a PSR, "no one else has any idea" what the Guidelines range will be. Defendant's Mot. to Vacate, Set Aside or Correct Sentence at 11 (internal quotation marks omitted). The defendant further contended that when he "pressed," his counsel told him to ask the prosecutor, and that when the defendant did ask the prosecutor, he "understood her to say that he would likely receive about 10 years." *Id.* at 12, 13. If his counsel had correctly informed him of his sentencing exposure, the defendant stated, he would have elected to go to trial rather than plead guilty. And he affirmatively declared his innocence of the crime "charged in Count Four." *Id.* at 14.

On December 7, 2004, the district court denied the defendant's motion to vacate his sentence. Relying on this circuit's opinion in *United States v. Hanson*, 339 F.3d 983 (D.C. Cir. 2003), the court concluded that the defendant failed to show that he was prejudiced by his counsel's alleged ineffectiveness. On July 29, 2005, the district court issued a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). The defendant now appeals the district court's denial of his ineffective assistance of counsel claim.

## II

It is well-established that the validity of a guilty plea depends on "'whether the plea represents a voluntary and intelligent choice,'" and that "the voluntariness of the plea depends on whether counsel's advice" satisfies the Sixth Amendment guarantee of effective assistance. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). It is also "well-established that . . . Sixth Amendment claims may be raised in section 2255 proceedings." *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005). As we noted in *Toms*, however, the "standard under which we review a district court's dismissal of a section 2255 petition alleging ineffective assistance is unsettled." 396 F.3d at 432. Although other circuits have held that ineffective assistance cases brought under section 2255 are reviewed de novo, *see, e.g.*, *Williams v. United States*, 452 F.3d 1009, 1012 (8th Cir. 2006); *United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005), "we have thus far expressly declined to fix the appropriate standard, not having been confronted with a case in which the standard made a difference." *Toms*, 396 F.3d at 433. As in *Toms*, we "persist in our agnosticism on the appropriate standard of review in this case," since "we find that [the defendant's] claim fails even under the more searching *de novo* standard." *Id*.

In *Strickland v. Washington*, the Supreme Court established the now-familiar two-part test for ineffective assistance of counsel claims. "First, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984). In this case, evaluation of the first part of the *Strickland* test is complicated by the fact that the defendant's trial counsel has since died and is unable to testify as to what advice he actually gave the defendant. As we have found in other cases, however, this appeal can be resolved by assuming that counsel was deficient in failing to inform the defendant that he would be treated as a career offender under the Sentencing Guidelines and, thus, that the first part of the *Strickland* test has been met. *See United States v. Horne*, 987 F.2d 833, 835 (D.C. Cir. 1993); *see also Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). We therefore turn directly to the question of whether the defendant suffered prejudice due to his counsel's deficient performance.

To satisfy the prejudice requirement in the context of an attack on a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In *United States v. Hanson*, 339 F.3d 983, we confronted a case strikingly similar to the instant appeal. In *Hanson*, the defendant pled guilty to distributing 50 grams or more of cocaine base. He subsequently moved to withdraw his plea, asserting that his trial counsel had failed to realize that he qualified as a career offender, and as a consequence had calculated his Guidelines sentencing range as 121 to 151 months rather than the correct range of 262 to 327 months. The district court denied the motion and sentenced

Hanson to 262 months' imprisonment.  On appeal, we accepted that trial counsel's assistance had been constitutionally ineffective.  Based upon a consideration of four factors, however, we concluded that Hanson had failed to make the required showing of prejudice.  *See id.* at 990-92.  Each of those factors is present here as well.

The first factor in *Hanson* was "the district court's admonition at the plea hearing that Hanson should not rely on sentencing predictions."  *Id.* at 990.  Based on circuit precedent, we found that admonition to "weaken[] the defendant's claim that those predictions were at the root of his decision to plead guilty."  *Id.* (citing *Horne*, 987 F.2d at 834-38).  The district court gave the same admonition here, telling the defendant that it would not "be able to determine the guideline range in your case until after a presentence report has been completed," Plea Hr'g Tr. 7 (July 24, 1998), and that he could not rely on "any prediction or promise as to what sentence" the court would impose, since the court did not "know [itself] right now until [it received] the presentence report," *id.* at 9.

The defendant contends that it was not accurate for the court to tell a defendant that his Guidelines range was unknowable and that there was a risk he would be sentenced to the statutory maximum.  But even if the court's admonition was inaccurate, it nonetheless weakens the defendant's claim of reliance on a sentencing prediction.[2]  We agree with the defendant, however, that even if his claim of reliance on an inaccurate sentencing prediction "is 'weakened' by the warning he was given that no one could predict his sentence, it is not defeated" by that warning.  Defendant's Br. 31 (quoting *Hanson*,

_____

[2]We note that in this case the sentencing prediction at issue was allegedly made by the prosecutor rather than defense counsel, albeit on a "referral" from defense counsel.  *See supra* Part I.

339 F.3d at 990). The district court's admonition is only one factor in our analysis, and not the most important factor.

Second, in *Hanson* as in this case, "even if counsel had told" the defendant the correct Guidelines range -- 262 to 327 months in each case -- the defendant "would nonetheless have had reason to expect a sentence below that." *Hanson*, 339 F.3d at 990-91. In both cases, the plea agreement signed by the defendant held out the possibility of a departure below the Guidelines range, if the defendant were able to provide the government with substantial assistance in other investigations. *Compare Hanson*, 339 F.3d at 991, *with* Plea Agreement ¶ 20. We do not dispute the defendant's contention that he was less likely than Hanson to be able to provide useful information (because, unlike Hanson, he was not eligible for pretrial release), and hence that his prospects of receiving a Guidelines departure were dimmer. Even so, an examination of the plea agreement leaves no doubt that the possibility of a sentence below the Guidelines range was a factor in the defendant's decision to enter into the plea, and that this factor would have been relevant (although not as important as in *Hanson*) even if he had been correctly advised regarding that range.

Third, as in *Hanson*, had the defendant proceeded to trial and been convicted, he would have confronted a substantially higher Sentencing Guidelines range than that applicable to his plea (and a substantially greater sentence than that which the district court ultimately imposed). *See Hanson*, 339 F.3d at 991. In making this determination, we consider not only the count to which the defendant pled guilty, but also the other counts he would have faced had he gone to trial. *See United States v. McCoy*, 215 F.3d 102, 106-07 (D.C. Cir. 2000). Released from the strictures of its plea agreement, the government would have had no reason not to try the defendant on all five counts of the indictment. In addition, we proceed on the assumption that a

knowledgeable attorney would have correctly advised the defendant of the sentence he faced as a career offender if he chose not to plead -- even if trial counsel in this case did not do so. *See Hanson*, 339 F.3d at 991.

Focusing on the two most significant counts of the indictment, we note that a conviction on Count 3 -- for distributing five grams or more of cocaine base to the undercover officer in the grocery store parking lot -- would have yielded a Guidelines range of 360 months to life, rather than the 262 to 327 months range applicable to his plea.[3] Moreover, had the defendant been convicted on the count to which he ultimately pled guilty (Count 4) -- possession with intent to distribute 50 grams or more of cocaine base discovered during the search of his apartment -- he would have received a

---

[3]The 360 to life range results from a criminal history category of VI and an offense level of 37, with no reduction in the latter for acceptance of responsibility as in the case of a plea, *see* U.S.S.G. § 3E1.1, cmt. n.2. *See* U.S.S.G. ch. 5, Pt. A (sentencing table). The defendant's status as a career offender mandates the criminal history category. *See id.* § 4B1.1. The offense level of 37 results from a combination of the career offender guideline, which assigns level 37 when the maximum statutory sentence is life, *id.* § 4B1.1, and the relevant statute, 21 U.S.C. § 841(b)(1)(B), which authorizes a maximum sentence of life for anyone who distributes five grams or more of cocaine base and who has a prior felony drug conviction. The defendant correctly points out that the statutory maximum life sentence applies only if, before trial, the government files "an information with the court . . . stating in writing the previous convictions to be relied upon." *Id.* § 851(a)(1). But there is no reason to expect that the prosecutor would have failed to file the necessary information in the absence of a negotiated plea agreement.

mandatory sentence of life in prison.[4] As in *Hanson*, "there is no question but that a competent attorney would have advised [the defendant] of the mandatory minimum sentence he faced" if he decided not to plead. 339 F.3d at 991 (citing *United States v Booze*, 293 F.3d 516, 518-19 (D.C. Cir. 2002)).

The final factor in analyzing the defendant's claim of prejudice is the strength of the defenses he would have had against these charges had he gone to trial. As we explained in *Hanson*, a defendant "does not need to show that he would have *prevailed* at trial, only that there was a reasonable probability that he 'would have *gone* to trial.'" *Hanson*, 339 F.3d at 991 (quoting *McCoy*, 215 F.3d at 108) (emphasis in original). "[A]ny rational decision regarding the latter," however, "would have required a realistic assessment" of the probability of the former. *Id.*

The fact is that the defendant did not proffer *any* defense at all to Count 3 in the briefs he filed in either this court or the district court. That is not surprising, given that the defendant's sale of 11.6 grams of crack was to an undercover officer and was caught on tape. At the time of his plea, the defendant expressly admitted selling crack to the officer. *See* Plea Hr'g Tr. 10 (July 24, 1998). And even when he subsequently sought to withdraw his plea to Count 4, the defendant never suggested that he was innocent of Count 3. To the contrary, he conceded that "[t]here are counts that I am guilty of," and by the context

---

[4]*See* 21 U.S.C. § 841(b)(1)(A) (requiring a mandatory life sentence if the defendant committed the offense after two prior convictions for felony drug offenses). The mandatory life provision applies only if the government files an information regarding a defendant's prior convictions, *id.* § 851(a)(1), but again we see no reason why the prosecutor would have failed to do so here. *See supra* note 3.

indicated that these included the charge of distributing crack to the officer. Sentencing Hr'g Tr. 6 (Feb. 5, 1999).[5] Under these circumstances, any knowledgeable attorney would "have advised [the defendant] that he stood little chance of obtaining an acquittal at trial" on the distribution count, *Hanson*, 339 F.3d at 991, which carried a Sentencing Guidelines range of 360 months to life.

Moreover, the defendant would also have faced the prospect of conviction on Count 4, which carried a mandatory minimum statutory sentence of life in prison. As the defendant correctly points out, there was less certainty of conviction on this charge than there was on Count 3; and there was likewise less certainty that he would face a mandatory life sentence than was true for the defendant in *Hanson*. Count 4 was based on the discovery of 100 grams of crack during the execution of a search warrant at the defendant's residence. Because the defendant did not have physical possession of the drugs at the time they were seized, the government's case would have had to rest on a theory of constructive possession, requiring proof that he "knew of, and was in a position to exercise dominion and control over them." *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (internal quotation marks omitted). The government's chances of obtaining a conviction under such circumstances are certainly lower than where it has both a tape and an eyewitness to the defendant's physical possession.

---

[5]The defendant, who had a prior conviction for attempted distribution of cocaine, told the court that he had "remorse for" the counts he was guilty of "because I did time on that before. . . [, s]o I do have to own up to my responsibility of the counts that I know I did commit that were wrong, but I did not commit all of the counts." Sentencing Hr'g Tr. 6.

Nevertheless, the chances of conviction were substantial. In addition to the 100 grams of crack found in the defendant's home, uncontested evidence supported the charge that he had sold the same drug to an undercover officer less than four months earlier. That evidence would have been admissible not only as direct evidence to prove Count 3, but also -- under Federal Rule of Evidence 404(b) -- to prove the defendant's knowledge and intent regarding the 100 grams at issue in Count 4. *See, e.g.*, *United States v. Douglas*, 482 F.3d 591, 596-601 (D.C. Cir. 2007); *United States v. Crowder*, 141 F.3d 1202, 1208 (D.C. Cir. 1998) (en banc); *cf. Cassell*, 292 F.3d at 794-95 ("A prior history of intentionally possessing guns, or for that matter chattels of any sort, is certainly relevant to the determination of whether a person in proximity to such a chattel on the occasion under litigation knew what he was possessing and intended to do so."). The evidence of one or both of the defendant's prior drug convictions could also have been admitted for the same purpose (depending on the district court's balancing of prejudice and probativeness under Rule 403, *see Cassell*, 292 F.3d at 791-96; *United States v. Watson*, 171 F.3d 695, 702-03 (D.C. Cir. 1999)).

In sum, if the defendant had been represented by knowledgeable counsel at the time he was presented with the opportunity to plead guilty, counsel would have told him that he faced the following choice: On the one hand, he could accept the proffered plea agreement and receive a sentence in the range of 262 to 327 months, with the possibility of a lower sentence if he were able to provide substantial assistance to the government. On the other hand, he could go to trial and face the overwhelming likelihood that he would serve at least 360 months in prison (more than eight years longer than the sentence he actually received), coupled with the substantial possibility that he would face a mandatory life sentence. Under these circumstances, we conclude that the defendant has failed to

demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Because he has therefore failed to satisfy the prejudice prong of the *Strickland* test, we reject the defendant's claim of ineffective assistance of counsel.[6]

## III

For the foregoing reasons, the judgment of the district court, denying the defendant's section 2255 motion, is

*Affirmed.*

---

[6]In support of his claim of prejudice, the defendant cites two cases in which, on direct appeal, we reversed district courts that had refused to permit the withdrawal of guilty pleas where defendants received higher-than-predicted sentences. Those cases are readily distinguishable. In *United States v. McCoy*, unlike here, the defendant asserted his innocence both to the charge to which he pled and to another as to which he had also been indicted, and we found that he had defenses to both. 215 F.3d at 106, 107. Moreover, as we explained in *Hanson*, in *McCoy* the defendant did not have "the opportunity for a reduced sentence if he pled guilty and cooperated with the government," and "the district court not only did not warn the defendant against relying on sentencing predictions, it failed to advise him of the maximum statutory penalty." *Hanson*, 339 F.3d at 991 n.7 (citing *McCoy*, 215 F.3d at 105, 106, 108). The other case cited by the defendant, *United States v. Watley*, is also distinguishable because not only did the district court not tell the defendant that "'he should not rely upon any [sentencing] estimate made by his counsel or anyone else,'" 987 F.2d 841, 847 n.10 (D.C. Cir. 1993) (quoting *Horne*, 987 F.2d at 836), but the court itself "reinforced" the defendant's misunderstanding of the sentence he "would likely" receive, *id.* at 847. *See also Hanson*, 339 F.3d at 990 n.5 (distinguishing *Watley*).