UNITED STATES

v.

Wayne FELDER, Defendant.

Criminal Action No. 00–254 (RWR).

United States District Court,
District of Columbia.

June 24, 2008.

Danny C. Onorato, U.S. Attorneys, Washington, DC, for United States of America.

## *MEMORANDUM OPINION AND ORDER*

RICHARD W. ROBERTS, District Judge.

Petitioner Wayne Felder filed a motion under 28 U.S.C. § 2255 to vacate this court's sentence arguing that his counsel provided ineffective assistance by not filing an appeal, by not adequately contesting an improper role enhancement under the sentencing guidelines, and by advising him to plead guilty without warning him about the role enhancements; that an unconstitutional prior conviction was used to enhance his criminal history; and that his sentence was unconstitutional under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The government opposes Felder's motion, but requests an evidentiary hearing on whether his attorney failed to appeal when requested. Because the facts regarding Felder's instructions concerning filing an appeal are in dispute, an evidentiary hearing will be scheduled on that issue. Felder's other claims are unsubstantiated and do not entitle him to relief.[1]

## *BACKGROUND*

Felder was indicted for conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and MDMA, in violation of 21 U.S.C. § 846; unlawful possession with intent to distribute 50 grams or more of cocaine base, in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii); unlawful possession with intent to distribute MDMA (ecstasy), in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(C); using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). Felder entered into an agreement with the government to plead guilty to the conspiracy count.

The facts to which Felder agreed under oath (Plea Tr. at 6) include the following. Felder contacted Sulette Mercado and asked her to help him transport cocaine

---

1. Felder has also moved to file a supplemental pleading and to obtain discovery of documents. The former motion will be granted and the latter will be denied without prejudice as premature.

base and MDMA from New York to North Carolina. Mercado did not have money to travel from North Carolina to New York and Felder agreed to wire money to a relative in North Carolina for Mercado. Mercado received the money and purchased a train ticket to New York. One day after arriving in New York, Felder picked Mercado up, obtained several peanut butter jars, and went to a hotel. Felder scooped out the peanut butter, inserted plastic bags of MDMA and crack cocaine into the jars, and then resealed the jars with glue. He gave the jars to Mercado who agreed to transport them back to North Carolina for him in her bag. Felder also had a bag which contained a .9 mm handgun. The next day, Felder and Mercado boarded a train with their bags and departed from New York. When the train stopped in Washington D.C., police officers approached Felder and questioned him. Felder told the police that he was not traveling with Mercado, but he admitted that Mercado was holding his train ticket. In response to an officer's request, Felder identified his bag on the luggage rack and consented to its search. The police found the handgun and arrested Felder. Mercado continued on the train to North Carolina where police stopped her after she got off of the train. An officer searched her bag and found 253.7 grams of cocaine base and 19.8 grams of MDMA. Mercado cooperated with the police, telling them about Felder's role in the offense and that he agreed to pay her to transport the drugs. (*Id.* at 31–37; Tr. Mots. Hr'g at 11, 15.)

In Felder's plea agreement, the government agreed not to seek at sentencing an increase in Felder's sentencing guidelines offense level for any role as "an organizer, leader, manager, or supervisor" of one or more participants in a criminal activity. *U.S. Sentencing Guidelines Manual* ("*USSG*") § 3B1.1 (c) (2001). At sentenc-ing, Felder asserted that the government would confirm that Mercado equally exercised decision-making authority. (Sent. Tr. at 3.) The government responded that Mercado was unlike an unwitting, first-time courier since she had transported drugs several times before for Felder for pay and knew how and where to stash the drugs, making the leadership enhancement for Felder inappropriate. (*Id.* at 7–8.) However, the court found, over Felder's objection, that the 2–point enhancement was warranted, resulting in a total offense level of 35. Felder's criminal history category of III, to which Felder did not object, was based in part upon a prior conviction which the presentence report described as having occurred after Felder waived the right to legal representation. Felder's resulting sentencing range was 210 to 262 months, and he was sentenced in 2002 to 210 months.

Felder claims that (1) his attorney, Valencia Rainey, was ineffective because she failed to file an appeal as he instructed, advised him to plead guilty when he was unaware of the role enhancement, and did not contest improper grounds for applying the role enhancement, (2) the prior conviction in which he reportedly was not represented by counsel should not have been included in his criminal history calculation, and (3) his sentence is unconstitutional following *Booker.* (Pet'r Mem. of P. & A. in Support of Mot. under 28 U.S.C. § 2255 ("Pet'r Mem.") at 7, 13; Pet'r Reply to the Gov't Opp'n to Pet'r Mot. ("Pet'r Reply") at 3; Pet'r Second Mot. to Suppl. Pleadings Pursuant to Fed. R. Civil P. 15(d) ("Pet'r Second Mot.") at 1.) The government opposes Felder's motion, but agrees that an evidentiary hearing should be held on whether Rainey failed to file an appeal. (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n") at 19.)

## DISCUSSION

In a § 2255 motion, the petitioner can move to "vacate, set aside, or correct the sentence" if the sentence was "imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255. The petitioner bears the burden of proving the violation by a preponderance of the evidence. *United States v. Vines*, Criminal Action No. 01–399(CKK), 2006 WL 1876951, at *3 (D.D.C. July 6, 2006). An evidentiary hearing does not need to be held when the "motion and the files and the records of the case conclusively show the prisoner is entitled to no relief." *United States v. Horne*, No. 99–3080, 203 F.3d 53, 2000 WL 60246, at *2 (D.C.Cir. Jan.4, 2000) (noting that it is within the court's discretion whether to hold a hearing when it is the same court that presided over the petitioner's criminal proceedings).

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prove ineffective assistance of his counsel, Felder must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance is evaluated on the basis of how counsel would have viewed it at the time without the benefit of hindsight. *Id.* at 689, 104 S.Ct. 2052. For the first prong, the petitioner must show that counsel did not provide reasonable service under the. "prevailing professional norms" given the circumstances. *Id.* at 688, 104 S.Ct. 2052. Courts will look to "an attorney's ethical duties, including those which require counsel to bring skill and knowledge to the case and to provide zealous representation." *Best v. Drew,*

Criminal Action No. 01–262(RWR), 2006 WL 2035652, at *3 (D.D.C. July 18, 2006). For the second prong, a reasonable probability is "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. *See also United States v. Bowie*, 198 F.3d 905, 908–09 (D.C.Cir.1999) (noting that reasonable probability can be less than 50.01%) Courts can analyze the second prong first to determine whether there was prejudice to the petitioner without examining counsel's performance under the first prong. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

### A. Enhancement for Aggravating Role

Several factors can measure defendants' relative roles for purposes of applying the § 3B1.1 aggravating role enhancement: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *U.S.S.G.* § 3B1.1 n. 4 (2001). *See also United States v. Graham*, 162 F.3d 1180, 1185 n. 5 (D.C.Cir.1998) (stating that although these factors are technically for distinguishing between a manager or supervisor from an organizer or leader, they can be used in distinguishing a manager from a participant because the "two inquiries differ only in degree rather than in kind").

Mere " 'control over a scheme rather than over a *participant* in a scheme,' however, does not warrant a sentencing adjustment pursuant to section 3B1.1 (c)." *United States v. Bapack*, 129 F.3d 1320, 1324 (D.C.Cir.1997) (emphasis in original). A participant is a " 'person

who is criminally responsible for the commission of the offense, but need not have been convicted.'" *Id.* at 1325 (quoting *U.S.S.G.* § 3B1.1 n. 1 (1995)) (stating that a criminally responsible person is someone who committed all the elements of the crime with the requisite mens rea). An aggravating role enhancement under the guidelines must be supported by a preponderance of the evidence. *Graham,* 162 F.3d at 1183.

Felder argues that Rainey should have objected to the court considering Mercado's earlier acts in awarding the § 3B1.1 (c) enhancement since they were not relevant conduct for his offense of conviction, and he was prejudiced by their use. (Pet'r Reply at 3.) However, both the parties and the court referred to Mercado's earlier transactions as tending to mitigate, not aggravate, any showing that Felder exercised control or decision making authority over her. (*See, e.g.,* Sent. Tr. at 9 ("It is he who solicited his accomplice, although she was a very willing accomplice and a repeat accomplice.")) The enhancement was applied because he solicited her, he gave her the money to travel to New York to meet him, and he dictated when she would transport the drugs, the mode of transportation she would use, and the containers in which she would carry the drugs. (*Id.* at 9.) Mercado's earlier acts were undisputed and, as used, did not prejudice Felder at all.[2]

According to Felder, Rainey also failed to argue "that the district court finding that the petitioner 'purchased the ticket' was an [im]permissible basis to support a sentence enhancement pursuant to U.S.S.G. 3B1.1(c)" (Pet'r Mem. at 10) be-

cause in purchasing the ticket, he was "exercising management responsibility over property, assets, or activities. of the conspiracy," and not over a participant. (*Id.* at 11 (internal quotation marks omitted).) However, Felder's purchase of Mercado's ticket was an indicator of his control over her. She did not come and go as she pleased or when she pleased; she left North Carolina only when he said to and only once he furnished her with travel funds, and went only where he said to go. In any event, his funding her ticket was but one of the multiple factors identified above that demonstrated by a preponderance of the evidence that Felder led a small criminal enterprise and exerted control over Mercado's actions in it, and not just over property. Felder has demonstrated no reasonable probability that the sentencing result would have been different had Rainey made the argument Felder raises. Therefore, Rainey was not ineffective by failing to argue that the court improperly applied the leadership role enhancement.

### B. *Plea Agreement*

 A claim of ineffectiveness of counsel "'arising out of the plea process' must be evaluated under the *Strickland* test." *Best,* 2006 WL 2035652, at *5 (quoting *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). A plea based upon the advice of counsel that "'falls below the level of reasonable competence such that the defendant does not receive effective assistance' is neither voluntary nor intelligent." *United States v. McCoy,* 215 F.3d 102, 107 (D.C.Cir.2000)

---

**2.** Felder seems to suggest that the prosecutor violated the plea agreement and asked for the § 3C1.1 enhancement by saying "I do realize that there was a basis for us to ask for that." (Pet'r Suppl. Reply at 5.) What Felder omits is the prosecutor's very next statement which

began, "But, on the other hand," and ended moments later with "we again, do not request the enhancement[.]" (Sent. Tr. at 5–6.) In context, the quote Felder cites reflects no breach of the plea agreement.

(quoting *United States v. Loughery*, 908 F.2d 1014, 1019 (D.C.Cir.1990) (internal citation omitted)). When the evidence supports a defendant's assertion that he would not have accepted the plea agreement but for counsel's erroneous advice, a defendant has been prejudiced. *See United States v. Streater*, 70 F.3d 1314, 1322 (D.C.Cir.1995) (stating that the defendant's affidavit asserting his innocence and intention to argue a defense and his rejection of plea offers until after counsel erred and the judge sent for a jury panel support an intent to proceed to trial). To satisfy the required showing of prejudice, a "defendant must make more than a bare allegation that he 'would have pleaded differently and gone to trial[.]' " *United States v. Horne*, 987 F.2d 833, 836 (D.C.Cir.1993) (quoting *Key v. United States*, 806 F.2d 133, 139 (7th Cir.1986)). *See also United States v. Tolson*, 372 F.Supp.2d 1, 19 (D.D.C.2005) (stating that the *Strickland* test requires not "some" probability, but "reasonable" probability, a threshold that bare allegations fail to satisfy). The prejudice determination is "closely related to the objective prediction of whether the defense could succeed if the case went to trial." *United States v. Del Rosario*, 902 F.2d 55, 58 (D.C.Cir.1990) (noting that whether there is a colorable claim of innocence is relevant to the determination of a motion to vacate a plea due to ineffective assistance of counsel). A defendant's representations at the plea hearing regarding "adequacy of counsel and the knowing and voluntary nature of his plea ... may 'constitute a formidable barrier' to ... later refutations." *United States v. Taylor*, 139 F.3d 924, 933 (D.C.Cir.1998) (internal citations omitted) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)).

Felder argues that Rainey was "ineffective for advising the Petitioner to enter a Plea Agreement" because he reasonably understood that § 3B1.1(c) could not apply and he should have been subject to a sentencing range of only 168 to 210 months. (Pet'r Reply at 5.) He asserts that the plea agreement precluded an enhancement under § 3B1.1. (*Id.* at 4.) The record casts doubt upon his claim. What the agreement precluded was the government asking for such an enhancement, not the court applying one. The text was not ambiguous. During the plea, Felder acknowledged that he had read and understood the plea agreement and discussed its terms with Rainey. (Plea. Tr. at 18–19.) Nor does Felder argue that the plea colloquy itself was unconstitutional; an examination of the transcript reveals that Felder's guilty plea was "attended by all the required procedural safeguards [of Rule 11]." *United States v. Cray*, 47 F.3d 1203, 1208 (D.C.Cir.1995). Felder agreed that the factual proffer read in court was a "true and accurate" description of the events that occurred; he had sufficient time to speak with his attorney; he declined an opportunity to ask any additional questions or speak with his lawyer before entering a plea; and he proceeded to voluntarily admit guilt. (Plea Tr. at 27, 36, 39.) He acknowledged that his lawyer's sentencing prediction was not conclusive because "nothing will be certain until after the probation officer submits her or his sentencing report," and that while the parties would have an opportunity to file objections, the court would make the final determination of his guideline range. (*Id.* at 25–28, 38.) Felder acknowledged that "the sentence imposed might be much higher than any estimate that [his] attorney or the government made," that he could be sentenced to as long as life in prison, and that the court had "the authority in some circumstances, to impose a sentence that is more severe, or less severe, than the sentence that's called for by

the guideline range of months." (*Id.* at 28.)

Even if Rainey did ineffectively explain the plea agreement's provision regarding the § 3B1.1 enhancement, Felder would still have to show that he was prejudiced. Felder neither affirmatively alleges nor demonstrates that but for Rainey's error, he would have gone to trial had he known that the two-level increase for role in the offense could be applied. To measure the reasonable probability that Felder would have proceeded to trial, all counts that he would have faced must be considered and not just the counts to which he pled guilty. *In re Sealed Case,* 488 F.3d 1011, 1017 (D.C.Cir.2007) (stating that absent a plea agreement, the government would have no reason not to prosecute all the counts in the indictment). Here, the government's evidence included the 253.7 grams of cocaine base and 19.8 grams of MDMA that the police seized from Mercado, incriminating accomplice testimony, corroborating eyewitness police testimony that Felder and Mercado were traveling together, Felder's statements that he possessed the bag which contained the gun and that Mercado was holding his train ticket, and the loaded pistol found in Felder's possession. He also does not raise any plausible defenses and his effort to suppress the physical evidence and statements made to law enforcement was unsuccessful. (Tr. Mots. Hr'g at 43–50.) If he had gone to trial and were convicted, say, on the conspiracy count, Felder would likely have lost the three-point offense level reduction he was awarded under *U.S.S.G.* § 3E1.1 for acceptance of responsibility, exposing him to a total offense level of 38 and a guideline sentencing range of 292 to 365 months. *U.S.S.G.* § 5A (2001). Before reaching a plea agreement, Felder had also been facing a charge of using, carrying, and possessing a firearm during a drug trafficking offense. If convicted of this count, Felder would have faced an additional mandatory five-year minimum sentence to run consecutive to any other sentence imposed. The potentially longer sentence and the strength of evidence weigh against any reasonable probability that but for Rainey's alleged error regarding the leadership role enhancement, Felder would not have accepted a plea and proceeded to trial. He has not made out an actionable claim of ineffective assistance of counsel.

### C. *Notice of Appeal*

The *Strickland* test extends to claims of ineffective assistance based on a failure to file an appeal. *United States v. Taylor,* 339 F.3d 973, 977 (D.C.Cir.2003). A lawyer who disregards specific instructions from the petitioner to file a notice of appeal acts in a professionally unreasonable manner. *Id.* Counsel's failure to file an appeal requested by the client "cannot be considered a strategic decision." *Roe v. Flores–Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). A petitioner is "entitled to resentencing and to an appeal without showing that his appeal would likely have had merit" when his counsel does not file a requested appeal. *Peguero v. United States,* 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (citing *Rodriquez v. United States,* 395 U.S. 327, 330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969)). If a petitioner's attorney does not comply with a request to file an appeal, the sentence will be vacated and the petitioner will be resentenced to allow him to appeal. *See United States v. Ramos,* 807 F.Supp. 1, 3 (D.D.C.1992).

The court "must grant a prompt hearing under § 2255 unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *United States v. Pollard,* 959

F.2d 1011, 1030 (D.C.Cir.1992) (quoting 28 U.S.C. § 2255). A court has discretion to make this determination and "only where the § 2255 motion raises detailed and specific factual allegations whose resolution requires information outside of the record or the *judge's personal knowledge or recollection* must a hearing be held." *Id.* at 1031 (internal quotation marks omitted) (noting that "[e]ven if the files and records of the case do not clearly rebut the allegations of the prisoner, *no hearing is required* where his claims are 'vague, conclusory, or palpably incredible' ").

■ The parties present conflicting factual accounts. Felder asserts that he asked Rainey to file an appeal after he was sentenced. Although she later told him that there were no appealable issues, he claims he expressed his dissatisfaction to Rainey and still wanted her to file his appeal. (Pet'r Mem., Ex. at 2.) According to the government, Rainey discussed the issue of an appeal with Felder and was instructed by Felder not to file an appeal. (Gov't Opp'n at 18.) The government concedes that a hearing should be held on this issue. (*Id.* at 19.) Felder would be entitled to relief if his version of the events were found true. Therefore, an evidentiary hearing will be held to resolve the factual dispute.

## II. PRIOR CONVICTION

■ Felder challenges the presentence investigation report's conclusion that he waived his right to counsel in connection with his conviction stemming from a February 19, 1997 New York arrest for resisting arrest. (Pet'r Mem., Ex. at 2.) In an affidavit, Felder asserts that he never waived representation and argues that the conviction should not have been considered in his criminal history score. In *Daniels v. United States*, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), the defen-

dant challenged through a § 2255 petition his federal sentence because it was based on two prior unconstitutional state convictions. *Daniels* concluded that if

a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse. The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255. A defendant may challenge a prior conviction as the product of a *Gideon [v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)] violation in a § 2255 motion, but generally only if he raised that claim at his federal sentencing proceeding.

*Daniels,* 532 U.S. at 382, 121 S.Ct. 1578 (noting that in a rare case, a defendant may be able to use § 2255 to challenge a federal sentence based on a prior conviction when no other channel of review was available). If an enhanced federal sentence is ultimately imposed, a defendant could still "pursue any channels of direct or collateral review still available to challenge his prior conviction" and then apply to reopen the federal sentence. *Id. See also United States v. Clipper,* 313 F.3d 605, 608 (D.C.Cir.2002) (noting that a defendant has no right to collaterally attack a prior state conviction used for a sentencing enhancement unless the conviction was obtained when the defendant was unrepresented and did not competently and intelligently waive his right to counsel).

While Felder's presentence investigation report stated that he waived counsel (PSR ¶ 42), the New York court records, filed by

the government, reflect that Felder was represented by counsel in connection with his February 19, 1997 arrest. (Gov't Opp'n, Ex. A at 15.) Moreover, at sentencing in this case, Felder acknowledged that he had received and reviewed the presentence investigation report, *see* docket entry [41] in *United States v. Felder,* Criminal Action No. 00–254(RWR) (D.D.C.), and discussed it with Rainey (Sent. Tr. at 2), but he did not to object to the resisting arrest conviction being included in his criminal history score or to its underlying facts as stated in the report. Felder also has not proffered any evidence other than his affidavit to support his claim and does not allege that he in any way challenged on direct or collateral review that conviction for which he served sixty days in jail. (PSR ¶ 42.) Furthermore, he does not contest the accuracy or authenticity of the New York court records in his reply memorandum or his later second supplemental filing. Indeed, he appears to withdraw this challenge by stating that the "[p]etitioner voluntarily withdraws his *Gideon v. Wainwright* claim." (Pet'r Reply at 6.) Because he failed to object at sentencing to the use of the prior state conviction, does not contest the New York court records reflecting that he was represented by counsel, and appears to withdraw this claim, relief on this claim will not be granted.

## III. *BOOKER*

▮ Felder also argues that his sentence imposed in this case in 2002 is unconstitutional under the 2005 Supreme Court ruling in *Booker* because the sentence was imposed based on mandatory sentencing guidelines. *See Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (concluding that the federal sentencing guidelines were unconstitutional as mandatory and rendering them advisory). However, *Booker* does not apply retroac-

tively to cases on collateral review, such as Felder's. *In re Zambrano,* 433 F.3d 886, 889 (D.C.Cir.2006). Because *Booker* is not retroactive, the then-mandatory guidelines applied to Felder and he is not entitled to relief under § 2255.

## CONCLUSION

Because the petitioner has established that a conflict of fact exists regarding his request for Rainey to file an appeal, a hearing will be granted. Because Felder failed to substantiate his remaining claims regarding ineffective assistance of counsel, the calculation of his criminal history, and the application of *Booker,* no relief will be granted based upon these claims. Therefore, it is hereby

ORDERED that new CJA counsel for the petitioner be appointed. It is further

ORDERED that an evidentiary hearing be, and hereby is, scheduled for October 23, 2008 at 10:00 a.m. on the issue of whether Felder asked Rainey to file a notice of appeal. If petitioner is to testify, then counsel for petitioner is directed to arrange promptly with the warden of petitioner's institution and John Cramer of this court's Office of Information Technology for petitioner's presence and testimony by teleconferencing. Should that capacity be unavailable, counsel for petitioner shall promptly notify counsel for the government to prepare an appropriate writ to secure petitioner's presence. The petitioner's request for relief on the remaining grounds is DENIED. It is further

ORDERED that the petitioner's motion ▮ for leave to file a second supplemental pleading to his § 2255 motion be, and hereby is, GRANTED. It is further

ORDERED that the petitioner's motion ▮ for discovery of documents pertaining to whether Rainey visited him at D.C. Jail following his February 21, 2002 sentencing

be, and hereby is, DENIED without prejudice as premature.